IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| J. MARK DOWNING and S. VIRGINIA DOWNING, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| TRUIST FINANCIAL CORPORATION, and TRUIST BANK, | ) Case No. 2:23-cv-2469-JTF-atc ) ) ) |
| Defendants. | ) ) ) ) |

**ORDER GRANTING TRUIST'S MOTION TO DISMISS**

Before the Court is Defendant Truist Financial Corporation and Truist Bank's ("Truist") Motion to Dismiss Plaintiffs' First Amended Complaint for Declaratory Judgment, Injunctive Relief, Unconscionable Contract of Adhesion and Damages pursuant to Federal Rule of Civil Procedure 12(b)(6), filed on September 15, 2023. (ECF No. 11.) Plaintiffs J. Mark Downing and S. Virginia Downing filed their Response on November 3, 2023, and Truist filed its Reply on November 30, 2023. (ECF Nos. 23 & 27.) For the reasons set forth below, Truist's Motion to Dismiss is **GRANTED**.

      **I.**      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

J. Mark Downing and S. Virginia Downing are a married couple residing in Memphis, Tennessee (ECF No. 10, 1 & 4.) Truist Financial Corporation is a North Carolina corporation that acts as the holding company for Truist Bank, which does business in Memphis, Tennessee. (*Id.* at 1-2.) Mrs. Downing had a checking account with Truist Bank ending in the numbers 5933. (*Id.* at

2.) Routine transactions involving Mrs. Downing's bank account include the automatic deposit of her Social Security check and deduction for the monthly draft of her life insurance. (*Id.*)

Mrs. Downing alleges that on November 10, 2022, a check numbered 1715 was fraudulently created and drawn from her bank account. (*Id.* at 3.) This check was made payable to Zakura Cherry for $5,000. (*Id.*) She further alleges that the real check is blank, and was the next check in sequence to be used, meaning that that the fraudulent activity occurred within the bank and/or its internal banking system by one of its employees. (*Id.*)

On November 18, 2022, Truist Bank sent Mrs. Downing a letter dated November 18, 2022 indicating that it returned the check "to the last depositor." (*Id.*) On the same day, Mrs. Downing informed Truist Bank of the fraudulent check, and they closed her existing bank account, requiring her to create a new account. (*Id.*) The new bank account ended in the numbers 9711. (*Id.*) Truist Bank sent Mrs. Downing another letter dated November 18, 2022 indicating that the fraudulent check had been credited to the bank account in the amount of $5,000. (*Id.*) They also provided her with an Affidavit of Faud regarding the check that she completed and notarized. (*Id.* at 3-4.)

On December 30, 2022, Mr. Downing wrote a check made payable to his wife, drawn from one of his business accounts at First Horizon Bank in the amount of $5,000, which was deposited into her new bank account. (*Id.* at 4.) This check cleared Mr. Downing's bank account on January 3, 2023, and was never credited back. (*Id.*) On January 14, 2023, Mrs. Downing received a letter from Truist Bank dated January 4, 2023, which stated that it was closing the bank account due to the Downings' fraud. (*Id.*) Thereafter, Mrs. Downing was unable to access the bank account. (*Id.*) Mr. Downing went to Truist Bank on the same day, and asked the manager to call First Horizon Bank to determine whether there was any suspicious activity with his bank account,

and whether the $5,000 check was fraudulent. (*Id.* at 5.) Truist Bank never made the call, and an employee told Mr. Downing that the $5,000 check was fraudulent. (*Id.*)

Plaintiffs commenced this action by filing a Complaint in state court on July 5, 2023. (ECF No. 1, 1.) Defendants timely removed the action to this Court on August 3, 2023. (*Id.* at 4.) In their initial Complaint, Plaintiffs sought declaratory judgment that Truist Bank wrongfully closed the bank account and that Plaintiffs did not commit any acts of fraud. (*Id.* at 10.) They also brought claims for (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) violation of the obligations of good faith and duty of ordinary of care as set forth in the Tennessee Uniform Commercial Code ("UCC"); (4) violation of the Consumer Financial Protection Bureau's ("CFPB") Unfair, Deceptive, or Abusive Acts or Practices ("UDAAP"); and (5) violation of the Tennessee Consumer Protection Act ("TCPA"). (*Id.* at 11-12.) They also sought injunctive relief in the form of a temporary restraining order, a preliminary injunction, and permanent injunction ordering Defendants to allow Mrs. Downing to access and use the second bank account and inform all banks and other third parties that both bank accounts were closed without stating or implying that the accounts were closed due to fraudulent activity. (*Id.* at 10.)

Defendants filed their initial Motion to Dismiss on August 16, 2023, (ECF No. 9), but Plaintiffs amended the Complaint as of right on September 5, 2023, (ECF No. 10). The First Amended Complaint seeks declaratory judgment that Truist Bank wrongfully closed the second bank account, that Plaintiffs did not commit any acts of fraud, and that the Bank Services Agreement is an unconscionable contract of adhesion. (*Id.* at 8.) It also asserts causes of action for (1) unconscionable contract of adhesion; (2) breach of the implied covenant of good faith and fair dealing; (3) violation of the UCC; and (4) violation of the TCPA. (*Id.* at 8-11.) The First Amended Complaint seeks the same injunctive relief that was sought in the initial complaint, in addition to

compensatory damages in the amount of $100,000.00 as well as treble damages in an amount to be determined by the Court. (*Id.* at 7-8 & 12.)

Defendants filed their Motion to Dismiss Plaintiffs' First Amended Complaint on September 15, 2023 (ECF No. 11.) Plaintiffs filed a Response on November 3, 2023, and Defendants filed their Reply on November 30, 2023. (ECF Nos. 23 & 27.)

## II. JURISDICTION AND GOVERNING LAW

The Court has original jurisdiction to adjudicate Plaintiffs' claims under 28 U.S.C. § 1332(a)(1), because this action is between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds seventy-five thousand dollars ($75,000.00). To the extent that Plaintiffs have sought relief under state and common law, Tennessee law governs their claims. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) (directing federal courts to apply state substantive law and federal procedural law). Therefore, the Court applies Tennessee substantive law to Plaintiffs' state law claims.

## III. LEGAL STANDARD

When evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (The court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true."). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In other words, although the complaint need not contain detailed facts, its factual assertions must be substantial enough to raise a right to

4

relief above a speculative level. *Ass'n of Cleveland Fire Fighters v. City of Cleveland,* 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). However, "'naked assertions devoid of further factual enhancement' contribute nothing to the sufficiency of the complaint." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). Determining whether a complaint states a plausible claim is "context-specific," requiring the Court to draw upon its experience and common sense. *Iqbal*, 556 U.S. at 679. Defendants bear the burden of "proving that no claim exists." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 433 (6th Cir. 2008).

While the Court's decision to grant or deny a motion to dismiss "rests primarily upon the allegations of the complaint, 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint [] also may be taken into account.'" *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)). The Court may also consider "exhibits attached to the defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011) (citation omitted).

### IV. ANALYSIS

Truist argues that Plaintiffs' Amended Complaint fails as a matter of law because: (1) the Bank Services Agreement ("BSA") explicitly permits Truist to close and/or freeze any account at any time and Plaintiffs have not identified any other provision of the contract that Truist allegedly breached; (2) the BSA is not an unconscionable contract of adhesion; (3) Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing cannot stand alone where Truist has not breached any contract with Plaintiffs; (4) the provisions of the "UCC" on which Plaintiffs rely are inapplicable to the facts asserted here; (5) Truist's alleged conduct is not actionable under the

5

TCPA and Plaintiffs have failed to state with particularity which provisions of the TCPA that Truist allegedly violated; and (6) Plaintiffs are not entitled to injunctive relief or a declaratory judgment where all other claims fail as a matter of law. The Court considers each argument below.

### A. The Terms of the Bank Services Agreement

Truist contends that it was not wrongful for them to freeze Mrs. Downing's account because the BSA permits them to do so. (ECF No. 11-1, 5.) Indeed, the BSA states that "[Truist] may suspend payment and/or place a hold on your account in [their] sole discretion and under any circumstance." (*Id.*) Plaintiffs appear to concede this point insofar as they state in their First Amended Complaint that "Plaintiffs were injured [by Defendants' actions] even though BSA allows for such." (ECF No. 10, 9.) Also, Plaintiff's Response to the instant Motion skips to an argument that the terms of the contract are unenforceable because the BSA is an unconscionable contract of adhesion. (ECF Nos. 10, 9 & 23, 6.) The Court agrees that the plain language of the BSA permits Truist to freeze Mrs. Downing's account at any time.[1]

### B. Unconscionability

Plaintiffs claim that the BSA is an unconscionable contract of adhesion and is therefore unenforceable. Truist seeks to have this claim dismissed first by arguing that their actions were in compliance with the BSA. Truist also argues that unconscionability is a defense to a breach of contract action, not an actionable claim under Tennessee law. (ECF No. 11-1, 6-7.) In response to this, Plaintiffs provide four pages of caselaw quotes concerning the test for determining whether a contract is unconscionable. (ECF No. 23, 6-10.) However, after review, it is clear that none of this caselaw addresses the issue that Truist raised in its Motion to Dismiss.

---

[1] Although this analysis does not directly address any of Plaintiffs' claims in the First Amended Complaint, it yields the relevant finding that Truist did not breach the contract between itself and Plaintiffs. The Court refers to this finding in its analysis of Plaintiffs' claims below.

Moreover, it appears that Defendants are correct. Here, Plaintiffs have advanced a claim for imposing an unconscionable contract of adhesion on them. (ECF No. pps. 8-9.) However, Tennessee courts have not recognized unconscionability as an actionable claim, but only as a defense against the enforcement of contracts of adhesion. *See Greer v. Home Realty Co. of Memphis, Inc.*, No. 07-2639, 2010 WL 11493119, at \*5 (W.D. Tenn. May 18, 2010) (quoting *Wallace v. Nat'l Commerce Bancorporation*, No. 02A01-9205-CV-00143, 1993 WL 44600, at \*3 (Tenn. Ct. App. Feb. 23, 1993)).

Plaintiffs' unconscionability claim is **DISMISSED**.

### C. Breach of the Implied Covenant of Good Faith and Fair Dealing

Truist next argues that Plaintiffs' claim for breach of the covenant of good faith and fair dealing must be dismissed because it does not constitute an independent basis for relief. (ECF No. 11-1, 8.) The Tennessee Supreme Court and lower courts have consistently found that an implied covenant of good faith and fair dealing is imbedded in every contract; thus, it "is not a cause of action in and of itself but [is] a part of a breach of contract cause of action." *Evans v. Vanderbilt Univ. Sch. of Med.*, 589 F. Supp. 3d 870, 899 (M.D. Tenn. 2022) (quoting *Doe v. Univ. of S.*, No. 4:09-CV-62, 2011 WL 1258104, at \*18 (E.D. Tenn. Mar. 31, 2011)) (internal citations omitted); *see also Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 572 (6th Cir.2003) ("Breach of the implied covenant of good faith and fair dealing is not an independent basis for relief.").

Plaintiffs do not respond to this argument. The Court notes that Plaintiffs have not advanced a breach of contract claim in their First Amended Complaint. *See supra* IV.A n.1. Because Plaintiffs' breach of the covenant of good faith and fair dealing claim is dependent upon a viable breach of contract claim, it is apparent that they failed to allege facts to support this claim. *Ashcroft at* 678. As a result, the Court **DISMISSES** this claim.

### D. Violations of the UCC and UDAAP

Truist next argues that Plaintiffs' UCC and UDAAP claims must be dismissed because they have failed to plead violations of the UCC and do not have the right to bring UDAAP claims. First, Truist points out that Plaintiffs have failed to allege that Truist violated any particular statute within Tenn. Code Ann. § 47-3-101 beyond stating that this section "sets out the general obligation of good faith in the performance and enforcement of contracts, including contracts between banks and their customers." (ECF No. 11-1, 10.) In response, Plaintiffs reiterate that they are alleging a violation of the "general obligation of good faith" as set forth in the statute. (ECF No. 23, 13.) The Court searched the statute and could not find the quoted statement. Because the Court cannot find anything resembling the alleged claim in the referenced chapter of the Tennessee Code, it concludes that Plaintiffs have failed to state a claim which, if true, would entitle them to relief.

Second, Truist argues that Tenn. Code Ann. § 47-4-401 has no relation to the facts Plaintiffs alleged in their First Amended Complaint. (ECF No. 11-1, 10.) Plaintiffs concede this in their Response. (ECF No. 23, 13.)

Third, Truist contends that Plaintiffs' claim alleging a violation of the "Consumer Financial Protection Bureau's (CFPB) Unfair, Deceptive, or Abusive Acts or Practices (UDAAP) rule," should be dismissed because they have no private right of action to assert this claim. (ECF No. 11-1, 11 (quoting ECF No. 10, 10).) Plaintiffs appear to be referring to the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act"), which created the UDAAP and the CFPB. *See* 12 U.S.C. § 5531. Plaintiffs do not point to any language in the Act suggesting that a private cause of action exists for the claim it is asserting, or respond to Truist's argument. The Court is not aware of any such language in the Dodd-Frank Act, and every other court that has

8

addressed this issue has found that no private cause of action exists. *See Burgess v. Bank*, No. 3:14-1676, 2015 WL 402663, at *5 (M.D. Tenn. Jan. 28, 2015), report and recommendation *adopted sub nom*. *Burgess v. Ally Bank*, No. 3:14-CV-01676, 2015 WL 1033075 (M.D. Tenn. Mar. 6, 2015), *aff'd* (Oct. 13, 2015); *Beider v. Retrieval Masters Creditors Bureau, Inc.*, 146 F. Supp. 3d 465, 472 (E.D.N.Y. 2015); *Deutsche Bank Nat. Tr. Co. v. Foxx*, 971 F. Supp. 2d 1106, 1120 (M.D. Fla. 2013). Because Plaintiffs do not respond to Truist's argument that the Dodd-Frank Act does not confer a private right of action, and every court has found otherwise, the Court concludes that Plaintiffs have failed to plead a UDAAP claim.

Because Plaintiffs have failed to plead facts supporting their claim that Truist violated some part of Tenn. Code Ann. § 47-3-101, conceded that no claim exists under Tenn. Code Ann. § 47-4-401, and failed to prove that there exists a private right of action under the Dodd-Frank Act for alleged UDAAP violations, all three claims are **DISMISSED**.

### E.  Violations of the TCPA

Truist argues that Plaintiffs' claims under the Tennessee Consumer Protection Act must be dismissed because they have failed to meet the heightened pleading standards necessary to state such a claim.

The TCPA prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code Ann. § 47-18-104(a). To state a claim under the TCPA, Plaintiff must allege "(1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an 'ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated.'" *Creative Lifting Servs., Inc. v. Steam Logistics, LLC*, No. 1:20-CV-337, 2022 WL 136727, at *2 (E.D. Tenn. Jan. 13, 2022) (citation omitted). Federal Rule of Civil Procedure 9(b)'s

heightened pleading requirements apply to allegations of unfair and deceptive acts under the TCPA. *See Metro. Prop. & Cas. Ins. Co. v. Bell*, No. 04-5965, 2005 WL 1993446, at *5 (6th Cir. Aug. 17, 2005) (citing *Harvey v. Ford Motor Credit Co.*, 8 S.W.3d 274, 275 (Tenn.Ct.App.1999)). "To satisfy this requirement a complaint must set forth specific fraudulent or deceptive acts rather than general allegations." *Agfa Photo United States Corp. v. Parham*, No. 1:06-cv-216, 2007 WL 1655891, 2007 U.S. Dist. LEXIS 40980 (E.D. Tenn. June 5, 2007) (citing *Humphries v. West End Terrace, Inc.*, 795 S.W.2d 128, 132 (Tenn. Ct. App. 1990)).

Plaintiffs' TCPA claim is that "[Truist] falsely represented that the second account was closed due to fraud" and that "[Truist's] actions violate the [TCPA]." (ECF No. 10, 11.) Beyond that one statement, Plaintiffs have not provided any supporting factual allegations or described how the conduct falls within any of the enumerated unfair or deceptive acts described in Tenn. Code Ann. § 47–18–104(b). The Court finds that Plaintiffs' TCPA claim has fallen short of the heightened pleading requirements for alleging a TCPA violation. Accordingly, Plaintiffs' TCPA claim is **DISMISSED**.

## V.     CONCLUSION

Consistent with the foregoing, Truist's Motion to Dismiss Plaintiffs' First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is **GRANTED**. The Court does not reach Truist's arguments seeking dismissal of Plaintiffs' request for declaratory or injunctive relief because any claim for relief is rendered moot by a finding that Truist is not liable for the alleged conduct.

**IT IS SO ORDERED** this 1st day of March, 2024.

*s/John T. Fowlkes, Jr.*
JOHN THOMAS FOWLKES, JR.
UNITED STATES DISTRICT JUDGE